CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

March 12, 2014

LETTER TO COUNSEL

RE: *Fay Rae Richardson v. Commissioner, Social Security Administration*;
Civil No. SAG-13-468

Dear Counsel:

On February 13, 2013, the Plaintiff, Fay Rae Richardson, petitioned this Court to review the Social Security Administration's final decision to deny her claim for Disability Insurance Benefits. (ECF No. 1). I have considered the parties' cross-motions for summary judgment, and the plaintiff's response. (ECF Nos. 17, 19, 20). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will grant the Commissioner's motion and deny the Plaintiff's motion. This letter explains my rationale.

Ms. Richardson filed her claim on May 22, 2007, alleging disability beginning on May 1, 2006. (Tr. 212-16). Her claim was denied initially on July 26, 2007, and on reconsideration on December 12, 2007. (Tr. 133-36, 139-40). A hearing was held on March 10, 2009 before an Administrative Law Judge ("ALJ"). (Tr. 33-77). Following the hearing, on May 13, 2009, the ALJ determined that Ms. Richardson was not disabled during the relevant time frame. (Tr. 118-28). The Appeals Council ("AC") granted Ms. Richardson's request for review and remanded the case, instructing the ALJ to (1) resolve inconsistencies between Ms. Richardson's severe hand and mental impairments and his RFC assessment, and (2) properly support the ALJ's finding that Ms. Richardson was not credible. (Tr. 129-32). A second hearing was held on July 12, 2011. (Tr. 78-115). On August 24, 2011, the ALJ again determined that Ms. Richardson was not disabled. (Tr. 8-32). The AC denied Ms. Richardson's request for review, (Tr. 1-5), so the ALJ's August, 2011 decision constitutes the final, reviewable decision of the agency.

The ALJ found that through the date last insured, Ms. Richardson suffered from the severe impairments of degenerative disc disease, right carpal tunnel syndrome, reflex sympathetic dystrophy, migraine headaches, and depression. (Tr. 13). Despite these impairments, the ALJ determined that Ms. Richardson retained the residual functional capacity ("RFC") to:

> perform a range of light work as defined in 20 CFR 404.1567(b), with lifting 10 pounds frequently and 20 pounds occasionally, standing 30 minutes to one hour, and sitting for 30 minutes, consistently, on an alternate basis, with customary breaks, eight hours per day, five days per week, must avoid heights and hazardous machinery, no prolonged stair climbing, ropes or ladders, balancing, or stooping,

>defined as no more than once or twice per hour, jobs that would moderately limit pushing and pulling and gripping with the right upper extremity, no repetitive neck turning or little neck turning, jobs that would have only occasional fine dexterity or manipulation, and jobs that can be performed with one arm or hand with moderate assist from the other arm and hand. In addition, the claimant is limited to simple, routine, unskilled jobs with an SVP of 1 or 2, with low stress, low concentration, and low memory, defined as little or no decision-making or changes in the work setting, performing one- or two-step tasks, no production rate work, and not much judgment required.

(Tr. 16). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Richardson was able to perform work existing in significant numbers in the national economy, and that she was not disabled during the relevant time frame. (Tr. 25-26).

Ms. Richardson presents two arguments on appeal: (1) the ALJ failed to properly evaluate whether she met or equaled Listing 1.04; and (2) the ALJ failed to support the RFC assessment with substantial evidence. Each argument lacks merit.

Initially, Ms. Richardson contends that the ALJ erred in considering Listing 1.04. Pl. Mot. 9-18. Her argument has several sub-parts. First, she argues that the ALJ failed to address Listing 1.04 with sufficient specificity. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). The claimant bears the burden of demonstrating that his impairment meets or equals a listed impairment. *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986). Furthermore, an ALJ is required to discuss listed impairments and compare them individually to Listing criteria *only when* there is "ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments." *Ketcher v. Apfel,* 68 F. Supp. 2d 629, 645 (D. Md. 1999) (emphasis added). The ALJ stated that he had considered:

>[L]istings . . . 1.02 and 1.04. There is no evidence of gross anatomical deformity together with findings on appropriate medically acceptable imaging techniques showing joint space narrowing, bony destruction or ankylosis. The medical evidence . . . does not establish an inability to ambulate effectively or to perform fine and gross dexterous movements effectively, as defined in sections 1.00B(2)(b) and (c) . . . In addition, there is no evidence of nerve root compression or spinal arachnoiditis to the degree specified in sections 1.04A and 1.04B. More particularly, treatment records fail to document motor loss (atrophy with associated muscle weakness or muscle weakness), accompanied by sensory or reflex loss . . . Moreover, no treating or examining physician has mentioned any findings equivalent in severity to any listed impairment, nor are such findings indicated or suggested by the evidence of record.

(Tr. 14). I find that the ALJ's analysis of Listing 1.04 provides substantial evidence to support his ultimate finding that Ms. Richardson did not meet a Listing. From the outset, it is worth noting that Ms. Richardson highlights certain aspects of her treatment record that could arguably satisfy particular facets of Listing 1.04. However, other evidence in the record, oftentimes contained in those same cited records, could be marshaled to offer further support to the ALJ's finding that Ms. Richardson's symptoms were not sufficiently severe as to meet a Listing. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls to the ALJ. *Mastro v. Apfel*, 270 F.3d 171, 179 (4th Cir. 2001) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Ultimately, Ms. Richardson does not argue that she meets each of the criteria set forth in Listing 1.04, but instead asserts that the medical evidence should have triggered the ALJ to specifically compare each listed criteria to her symptoms and, further, to evaluate her symptoms under the equivalence standard in 20 CFR § 404.1526. Her argument fails.

Listing 1.04 describes criteria regarding disorders of the spine, such as degenerative disc disease, which result in compromise of a nerve root. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. The sub-listings under Listing § 1.04 specify the types of medical evidence that may satisfy the severity requirements of the listing. To meet Listing 1.04A, evidence of nerve root compression must be "characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and, if there is involvement of the lower back, positive straight-leg raising test." *Id.* at 1.04A. Ms. Richardson claims that the ALJ "summarily concluded" that there was "no evidence of nerve root compromise[.]" Pl. Mot. 10. In fact, the ALJ found "no evidence of nerve root compromise . . . *to the degree specified in sections 1.04A and 1.04B*." (Tr. 14). Ms. Richardson cites the June 11, 2010 MRI as evidence correlating to the introductory paragraph of Listing 1.04, triggering a duty for a more detailed discussion of the Listing. However, within the RFC analysis, the ALJ discussed that MRI, and accurately stated that it showed "minimal to mild disc bulges at L2-3 and L3-4" and that her facet joints were "unremarkable[.]" (Tr. 21, 744). While the MRI shows "nerve root impingement" in the lumbar spine, Ms. Richardson has not established how that impingement could be "characterized by" the symptoms Ms. Richardson experienced in her cervical spine or arm. Ms. Richardson contends that an examination in January, 2008, more than two years prior to the MRI at issue, demonstrated muscle weakness in her right arm. (Tr. 667). The ALJ discussed that examination, including Dr. Sabbagh's other findings from the visit showing mild to moderate symptoms, such as degenerative changes that were "certainly nothing out of the ordinary for her age." (Tr. 20, 667). Further, he attributed the muscle weakness in her right arm to "moderate carpal tunnel syndrome" and found her MRIs to be "essentially normal[.]"[1] (Tr. 667). Further, Listing 1.04A requires positive straight leg tests

---

[1] In the same vein, Ms. Richardson cites an examination note from January 22, 2009, in which she was found to have "reduced range of motion of cervical spine." (Tr. 703). During that exam, Dr. Grabow observed that she walked with a normal gait, reported that previous steroid injections had not offered much benefit, restarted her on pain medications that she had discontinued, and advised her to seek treatment from a pain psychologist who could treat her symptoms with "meditation, hypnosis, biofeedback, etc." (Tr. 703-04). The ALJ also discussed the January 22, 2008 EMG study, which concluded that Ms. Richardson had "chronic right C6-C7 radiculopathy[,]" "moderate right carpal tunnel

when there is involvement of the lower back, and Ms. Richardson points to none.[2] Turning to Listing 1.04B, Ms. Richardson cites to a number of her complaints and descriptions of pain in the record, (Tr. 83, 84, 97, 104, 528, 685, 703, 740), but that sub-listing requires that such pain be substantiated by an operative note, pathology report of tissue biopsy, or medically acceptable imaging showing spinal arachnoiditis. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04B. While Ms. Richardson has evidence that certain phrases in Listing 1.04 may be met, she has not met her burden to demonstrate the existence of each criterion. Thus, Ms. Richardson has failed to show that the ALJ erred in his analysis of Listing 1.04 or in his consideration of the relevant medical evidence.

Ms. Richardson's next sub-argument is that the ALJ should have found her symptoms medically equivalent to a Listing. "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Zebley*, 493 U.S. at 531 (emphasis in original); *see also* 20 C.F.R. § 404.1526. If the claimant has an impairment that is described in the Listing, but (1) does not meet each criteria specified in the listing, or (2) exhibits all of the required findings, but lacks the required severity level for each finding, the claimant can show equivalency by proving other findings related to the impairment that are at least of equal medical significance to the listed criteria. *Id.* § 404.1526(b)(1). Alternatively, if the claimant has a combination of impairments which do not individually meet any listing, the claimant can establish equivalency by establishing findings of at least equal medical significance to the criteria contained in the most analogous listing. *Id.* § 404.1526(b)(3). Importantly, "[a] claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Zebley*, 493 U.S. at 531. Equivalent evidence for each of the criteria must be established. Ms. Richardson argues that the ALJ could have found equivalence if he had done a "proper analysis" of Listing 1.04. Pl. Mot. 16. However, the burden was on her to show equivalent evidence for all of the criteria in one of the Listings. As discussed above, she has not presented medical findings that meet or equal all of the criteria in Listing 1.04, and therefore, has not met her burden.

Ms. Richardson's third sub-argument is that the ALJ "failed to mention" the June 11, 2010 MRI. Pl. Mot. 17-18. As discussed above, the ALJ explicitly considered this MRI and noted its mild findings. (Tr. 21, 744). Ms. Richardson repeatedly misstates that the ALJ found no evidence of nerve root impingement or spinal arachnoiditis. Pl. Mot. 10; Pl. Resp. 1-2, 4. However, in fact, the ALJ said that evidence did not demonstrate that either impairment existed to the degree of severity required by Listing 1.04A and B. (Tr. 14). Thus, there is no reason to remand on this point.

---

syndrome[,]" and "mild right ulnar neuropathy at the wrist." (Tr. 20, 668-70). Ms. Richardson does not explain how those mild to moderate findings satisfy the requirements of Listing 1.04.

[2] The record contains at least two negative straight-leg raising tests. (Tr. 663, 667).

Second, Ms. Richardson contends that the ALJ failed to support the RFC determination with substantial evidence. Pl. Mot. 18-24. Ms. Richardson asks the Court to compare the ALJ's vacated 2009 hearing decision with the final decision of the Commissioner dated August 24, 2011. *Id.* Ms. Richardson argues that the ALJ did not comply with the October, 2010 remand order, alleging that it ordered the ALJ to consider the effects of her hand and mental impairments on the sedentary occupational base. Pl. Mot. 18-12. The remand order included no such directive, and the AC chose not to remand the case a second time, indicating that the AC considered the ALJ's decision to be sufficiently in compliance with the remand order. Further, "regardless of whether the ALJ fully complied with the Appeals Council's remand order, judicial review is limited to the question [of] whether the ALJ's decision is supported by substantial evidence and reflects application of the correct legal standards." *Fajardo v. Astrue*, CV 08–01615 AJW, 2010 WL 273168, at *3 (C.D.Cal. Jan.14, 2010). Moreover, a previous judgment vacated on appeal generally has no preclusive effect, and the ALJ was not bound by his previous decision. *Swoboda v. Colvin*, No. SKG-10-2478, 2013 WL 5182457, at *9 (D. Md. Sept. 11, 2013). This Court's focus is properly limited to whether the findings contained in the final decision of the agency are supported by substantial evidence and whether the correct law was applied. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Preston v. Heckler*, 769 F.2d 988, 990 (4th Cir. 1985)). The Commissioner's final decision must be upheld if it is supported by substantial evidence, which is more than a scintilla, but less than a preponderance of evidence, and sufficient to support a conclusion in a reasonable mind. *See Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); s*ee also* 42 U.S.C. § 405(g).

The ALJ supported the RFC assessment with over eight pages of analysis, stepping through the testimony of Ms. Richardson and her husband, her medical evidence and treatment records dating back to 2006 related to her physical and mental impairments, the opinions of her treating physicians, and the physical and mental capacity assessments by the state agency medical consultants. (Tr. 16-24). The ALJ explained that his determination that Ms. Richardson was capable of performing a reduced range of light work took into consideration her degenerative disc disease, reflex sympathetic dystrophy ("RSD"), moderate carpal tunnel syndrome in the right upper extremity, occasional migraine headaches, and depression. (Tr. 18). The RFC assessment accounted for impairments stemming from her back and neck pain by providing for a sit/stand option, avoidance of heights and hazardous materials, and postural restrictions. *Id.* Further, her right upper extremity RSD and carpal tunnel syndrome were considered, and handling limitations were included in the RFC assessment as a result. *Id.*; *see also* (Tr. 19-21) (discussing the medical evidence related to her complaints of right hand pain). Finally, the ALJ included restrictions on the skill and mental requirements of any potential work to account for Ms. Richardson's depression and anxiety. (Tr. 18). In support, the ALJ considered her history of prescription drug treatment for depression and anxiety, and the lack of any evidence in the record of psychiatric counseling. (Tr. 22). Thus, I find no reason for remand, as the ALJ supported his RFC assessment with substantial evidence.

For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 17) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 19) will be GRANTED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge